cree of the chancellor, as reported in 6 Cranch, 286.] From that decree the defendants appealed to this court.

The cause was argued before CHASE, Ch. J. BUCHANAN, NICHOLSON, and GANTT, J. by

Johnson, (Attorney General,) for the Appellants; and by Ridgely, for the Appellee.

DECREE AFFIRMED.

The appellants brought a writ of error to the Supreme Court of the United States, where the decree of this court, affirming that of the court of chancery, was affirmed. See 6 Cranch, 286.

---

## THE ATTORNEY-GENERAL vs. JARRETT.

APPEAL from a decree of the Court of Chancery dis missing the bill of complaint which was brought in the name of the Attorney-General, at the relation of West, to vacate a grant obtained by Jarrett for a tract of land call ed Belgrade. The facts in the case were these: The Re lator's title—On the 19th of May 1794, A. Jarrett returned a certificate of survey to the land office, for the land call ed Belgrade, (the first,) containing 1039 acres. On the 20th of February 1798, West obtained a proclamation war rant thereon, no person having proclamated the certificate. On the 22d of May 1798, West returned a certificate, un der his proclamation warrant, and called the land The Buckskin, containing 228 acres. On the 9th of May 1799, the composition money was paid by West. On the 3d of June 1799, West's certificate was caveated by A. Jarrett. On the 10th of February 1800, the judge of the land of fice, on a hearing of the caveat, passed an order for cor recting the certificate, by excluding part of a tract of land called Johnson's Enlargement, which appeared to be in cluded in the certificate of The Buckskin. On the 30th of June 1800, a corrected certificate was returned by West, containing 200 acres, excluding 28 acres, part of John son's Enlargement. On the 10th of October 1800, the corrected certificate was caveated by J. Jarrett, the defen

DECEMBER.

A certificate of survey was return ed to the land of fice for a tract of land called B J, surveyed on the 19th of April 1794, for A J. On the 8th May 1797, A J obtained a war rent of resurvey on W C, and in his resurvey made on the 1st of May 1798, he included B J, and called the land B S. On the 10th May 1798, A J ob tained a procla mation warrant on his own certificate of the land called B S, and had it executed on the 29th April 1799. B it D W had, on the 20th Feb. 1798, obtained a procla mation warrant on B J, and had it executed on the 22d of May 1798, and called the land B C. A J paid the composition money on B S on the 8th of May 1799, and D W paid the composi tion money on B C on the 9th of May 1799. Both certificates were caveated by the opposite party; and the judge of the land office or dered a grant to issue to A J for the land call d B S. To vacate which grant a bill was filed in the court of chancery, in the name of the attorney general, at the rela tion of D W. Decreed, that the bill be dismissed.

dant; and on the 20th of *April* 1801, the judge of the land office ruled the caveat good; and a grant was refused to *West*, because the land was included in another certificate, and granted to the defendant by the name of *Belgrade*, (the second.) This certificate of *Belgrade*, (the second,) the relator alleged was younger than *West's*, and that the grant was obtained thereon during the contest under the caveats. That the defendant had notice of *West's* certificate.

*The Defendant's title*—On the 1st of *May* 1798, *A. Jarrett* returned to the land office another certificate of survey for *Belgrade*, (the second,) containing 767 acres, under a warrant of resurvey issued on the 8th of *May* 1797, to resurvey *Wild Cat Den*. On the 10th of *May* 1798, *A. Jarrett* proclamated his own certificate for *Belgrade*, (the second.) On the 29th of *April* 1799, *A. Jarrett* returned a certificate under the proclamation warrant, and called the land *Belgrade*, (the second,) containing 92 acres, excluding the rest. On the 8th of *May* 1799, *A. Jarrett* compounded on this last certificate. On the 30th of *September* 1799, the certificate was caveated by *West*. On the 10th of *February* 1800, the judge of the land office *dismissed* the caveat of *West;* and on the 20th of *October* 1800, a grant issued on the certificate to the defendant, he having obtained an assignment thereof from *A. Jarrett*. The bill prayed that the grant for the land called *Belgrade*, issued to the defendant, might be vacated, and for further relief, &c.

HANSON, Chancellor, *(February* term 1805,*)* *Decreed*, that the bill of complaint be *dismissed*, but without costs. From this decree the complainant appealed to this court.

The case was argued at June term 1808, before POLK, BUCHANAN, NICHOLSON, and GANTT, J. by

*Hall* and *T. Buchanan*, for the Appellant; and by

*Johnson*, (Attorney-General,) for the Appellee, and was reargued at the present term before CHASE, Ch. J. BUCHANAN, GANTT, and EARLE, J.

*T. Buchanan*, for the Appellant, cited *Land Hold. Ass.* 186, 275, 359, 362, 319, 361, 469; and the act of 1785, ch. 88, s. 10.

1809

Attorney General
vs
Jarrett

1809.        *Martin*, and *Johnson*, (Attorney-General,) for the Ap-
Williams    pellee, cited *The Attorney-General vs. Snowden*, 1 *Harr.*
vs          *&amp; Johns.* 332.
Hodgson
                                                    DECREE AFFIRMED.

---

DECEMBER.                    WILLIAMS vs. HODGSON.

Whether or not        APPEAL from a decree of the Court of Chancery. The
the answer of one
of the defendants    bill, which was filed by the appellee against *Williams*,
to a bill in chan-
cery, is evidence    (the appellant,) and *John Clarke*, stated that *Williams*
against another
defendant?           and *Clarke* entered into partnership under the name of
A bond given by
one partner for a    *John Clarke, &amp;* Co. During the partnership, *Clarke*
simple contract
debt due from the    bought goods from the complainant, *(Hodgson,)* which
partners to a credi-
tor, and accepted    were delivered to *Clarke* on account of the partnership,
by him, is by ope-
ration of law a re-  and by him sold. That the belief that *Williams* was a
lease of the other
partner, and an      partner, gave credit to the firm. That on the 7th of July
extinction of the
simple contract      1797, *Clarke* settled with the complainant, and the con-
debt, at law and in
equity               cern was found indebted £819 0 5, *Virginia* currency;
Ignorance of the
law, as to the con-  and for that sum *Clarke* gave bond to the complainant, in
sequences of a
creditor's accept-   the names of *Clarke* and *Williams*, (jointly and severally,)
ing the bond of one
of the partners for  executed by *Clarke* alone, signed *John Clarke*, &amp; Co. That
a simple contract
debt, due from the   *John Clarke*, &amp; Co. being afterwards indebted to the com-
partnership, is not
a ground for relief  plainant in $598 34, and interest, for goods sold to *John*
in equity
Such a bond,         *Clarke*, for and on account of the concern, *Clarke*, for himself
although not bind-
ing on the partner   and *Williams*, on the 18th of November 1797, gave another
who does not ex-
ecute it, is obliga- bond to the complainant, signed *John Clarke*, &amp; Co. That
tory on the one ex-
ecuting it           *Clarke* is insolvent, &amp;c. That suits were brought on the
A complainant
is not entitled to   bonds in the general court against *Williams*, and were
relief in chancery
against the execu-   *non prossed*, because that court were of opinion that one
tors of a joint obli-
gor, who was a       partner could not execute a bond, so as at law to bind his
surety in the bond.
Per *Hanson*,Chan.   copartner, unless a special authority for such purpose ex-
*(note)*
                     isted. *Prayer* for a disclosure from the defendants, whe-
ther they were partners or not, and that they may be com-
pelled to account with and pay the money due to the com-
plainant, and for other relief, &amp;c. The *answer* of *Wil-
liams* stated, that he and *Clarke* entered into partnership
in October 1795, for three years, in the milling and dis-
tilling business. *Clarke* was directed not to purchase
merchandize on *Williams's* account, and he believes that
*Clarke* sold goods on his own account. He does not know
whether or not *Clarke* bought goods on the partnership ac-
count, and if he did, the answer insisted that the defen-